NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN L. PERKINS, individually, on Behalf of all other similarly situated and Derivatively on behalf of Bradley Pharmaceuticals, Inc., <br><br> Plaintiff, <br><br> v. <br><br> C. RALPH DANIEL, III et als., <br><br> Defendants | Civil Action No.: 06-cv-01518 (PGS) <br><br> O P I N I O N |

Currently before this Court is the defendants' motion to dismiss plaintiff's complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff filed a complaint in the instant action on March 30, 2006, and amended it on July 14, 2006. The Amended Complaint is the subject of the instant motion. The Amended Complaint sets forth a single count alleging that the Bradley Pharmaceutical's (Bradley) board of directors and two of its officers breached their fiduciary duty to the shareholders by concocting and approving a "sham sale" of Deconamine cough syrup (Deconamine).

The parties are before this court pursuant to diversity jurisdiction. 28 U.S.C. 1332. Bradley is incorporated in Delaware with a principal place of business in New Jersey, and Plaintiff resides in Maine. None of the members of the board or the officers reside in Maine.

I.

Bradley is a speciality pharmaceutical company that acquires, develops, and markets

1

prescription and over-the-counter medications (Compl. ¶ 5). Bradley does not rely on research and development for its revenue, rather it relies on marketing and promotion. Bradley generally derives its revenue from a particular brand name product prior to the release of a generic brand version. (Compl. ¶¶ 22-23).

According to the Amended Complaint, Bradley engaged in a "sham sale" of Deconamine in order to offset declining sales of AnaMantle HC, a hemorrhoid therapy product. Evidently, the marketplace was anticipating the release of a generic hemorrhoid therapy drug at a substantially reduced price, and as a result, sales of AnaMantle HC were in a downspin (Compl. ¶¶ 24-31). In order to offset the sagging revenues in the third quarter 2004, Daniel Glassman, Chief Executive Officer, and his son, Bradley Glassman, Senior Vice President of Marketing, entered into an agreement wherein a customer purchased $1 million of Deconamine but allowed the customer to return the Deconamine for a credit against future purchases through February 1, 2005 – four months after the close of the third quarter. Since Deconamine was not a popular product, plaintiff alleges its return was likely. The accounting staff was unaware of the circumstances of the sale (Compl. ¶ 47). As a result, $600,000 of net income was over-reported for the third quarter of 2004. Under ordinary accounting principles, the revenue from such a transaction could not be immediately recognized.

Immediately thereafter (December, 2004), Bradley received a notice from the Securities Exchange Commission (SEC) that it had commenced a "confidential informal inquiry;" and in February 2004, the SEC requested documents. At that point, Bradley announced that it would not be "releasing its 2004 earnings" on time (Compl. ¶¶ 37-41). On April 21, 2005, Bradley's independent auditors, Grant Thorton LLP, advised that the single sale of Deconamine did not meet

2

the criteria for revenue recognition when initially reported, and it should have been treated as deferred revenue (Compl. ¶¶ 37-41). Four days later the auditors found that Bradley had a material weakness in its internal controls related to the approval and communications of terms and conditions of sales contracts. (Compl. ¶¶ 37-41). Accordingly, a thorough internal investigation was conducted; and this delayed the filing of financial reports required by SEC for about a year. On January 27, 2006, Bradley finally filed its audited financial statement for 2004 (Comp. ¶ 46).

II.

Defendants contend that the Amended Complaint must be dismissed because Plaintiff has not plead demand futility with the particularity required by *Federal Rule of Civil Procedure 23.1*, which provides, in pertinent part, that:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation . . . the complaint shall []allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority . .. and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

Plaintiff concedes that he did not make a demand on the Bradley board (Compl. at ¶¶ 49-52). He argues, in opposition to Defendants' motion to dismiss, that his failure to make a pre-suit demand upon the Board is excused as futile.

A shareholder derivative action is one in which a shareholder asserts a claim belonging to the corporation and on the corporation's behalf. *In re Prudential Ins. Co. Derivative Litig.*, 282 N.J. Super. 256, 274, 659 A.2d 961 (App. Div. 1995). *In Re Merck & Co. Inc.*, 2006 WL 1228595 at 1. (May 9, 2006) *rev'd on other grounds*, 493 F. 3d 393 (3d Cir. 2007). A shareholder derivative action is an exception to the principle of corporate governance that "the decision to bring a lawsuit or to

3

refrain from litigating a claim on behalf of the corporation is a decision concerning the management of the corporation and consequently is the responsibility of the directors." *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992). Since shareholder derivative actions undermine director control, courts have cautioned against unchecked shareholder derivative litigation because such suits may have a negative effect on corporate governance when frivolous lawsuits initiated by opportunistic shareholders are brought . . . [and] if abused . . . can impede the best interests of the corporation." *In re PSE&G S'holder Litig.*, 173 N.J. 258, 278 (2002). *In Re Merck & Co. Inc.*, 2006 WL 1228595 at 1. (May 9, 2006) *rev'd on other grounds*, 493 F. 3d 393 (3d Cir. 2007). In New Jersey, like most other states, in order to prevent excessive shareholder derivative litigation, shareholders must to make a demand upon the corporation's board of directors prior to instituting a derivative action. *R. 4:32-3*. Accordingly, an action may not commence unless the plaintiff/shareholder can show that (1) the corporation itself has refused to proceed after suitable demand; or that (2) demand should be "excused by extraordinary conditions." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991)).

Similarly, Federal Rule of Civil Procedure 23.1 establishes threshold pleading requirements with respect to shareholder derivative litigation, but state law governs the substantive requirements for demand.[1] Accordingly, plaintiff/shareholder must make a pre-suit demand upon the defendant Board of Directors to take the action it seeks, unless such demand is excused. The demand is excused as futile when the shareholder pleads with particularity facts creating a reasonable doubt that: (1) the directors are disinterested and independent, or (2) the challenged transaction was

---

[1] In this case, Bradley is incorporated in Delaware; but headquartered in New Jersey. Since the courts of New Jersey and Delaware have adopted the same test to determine demand requirements and liability, the choice of law issue does not arise. *In Re PSE&G Shareholder Litigation*, 173 NJ 258, 280 (2002). *In Re Merck & Co*, 2006 U.S. Dist. Lexis 27861 at *23 (DNJ May 5, 2006), rev'd on other grounds 493 F. 3d 393 (3d Cir. 2007)..

4

otherwise the product of a valid exercise of business judgment. Plaintiff bears the burden of establishing that demand is futile. *In re PSE&G S'holder Litig.*, 173 N.J. 258 at 287; *Brehm v. Eisner*, 746 A.2d 244, 256 (2000). This standard is premised on "the key principle ... that directors are entitled to a presumption that they were faithful to their fiduciary duties." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040 (Del.2004).

In this motion, as any other where dismissal for failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)), the court must accept as true all of the factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *Cal. Pub. Emples' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 134 (3d Cir.2004); *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001). In giving all reasonable deference to the plaintiff's allegations, the Court must generally limit its inquiry to the pleadings. *Matter of Prudential Ins. Co. Derivative Litigation*, 282 N.J.Super. 256, 267 (Ch. Div.1995).

III.

The Amended Complaint contains 56 paragraphs in a single count of breach of fiduciary duty, asserting Defendants alleged failure to (1) ensure that Bradley was operated in a diligent manner, (2) supervise the preparation and filing of all financial statements, (3) take action to correct known misconduct in violation of defendants fiduciary duties of good faith, and (5) derail the "phony" Deconamine sale in a timely fashion. (Compl. ¶ 17-21). Further, the Amended Complaint identifies the defendants and their corporate capacities. They are:

- Daniel Glassman - Chair and Chief Executive Officer of Bradley. Daniel is the husband of Iris Glassman (another director) and the father of Bradley Glassman, who is a Vice President of Marketing for Bradley (Compl. ¶ 6).

- R. Brent Lenczycki - Vice President and Chief Financial Officer (Compl. ¶ 7)[2];

- Steven Kriegsman - Director and chair of audit committee (Compl.¶ 9);

- Andre Fedida - Director and audit committee member (Compl. ¶10);

- Alan Wolin - Director and audit committee member (Compl.¶ 11);[3]

- Iris Glassman - Director, is the spouse of Daniel Glassman and mother of Bradley Glassman;

- Michael Fedida - Director and brother of Andre Fedida (Compl. ¶14);

- C. Ralph Daniel, III - Director (Compl. ¶13)[4].

The Amended Complaint then outlines the alleged sham transaction of Deconamine as described above, and cites to numerous press releases of Bradley concerning "the consequence of the phony sale." (Compl. ¶¶36-48).

The plaintiff's beef with the Officer Defendants (Daniel Glassman and Lenczycki) is that they breached their fiduciary duty "by designing and executing on the phony Deconamine sale and preparing false financial statements". (Compl. ¶¶ 33, 34 and 55). It is noteworthy that with regard to CFO Lenczycki, this allegation appears to be contrary to a press release of Bradley which plaintiff adopted as an allegation. In paragraph 47 of the Amended Complaint, it states that the Chief Financial Officer had no knowledge of the inappropriate sales contract, until several months later, and financial statements "were prepared without the appropriate personnel giving consideration to

---

[2] Plaintiff defines Daniel Glassman and Lenczycki as "officer defendants." Lenczycki is <u>not</u> a director.

[3] Plaintiff defines Kriegsman, Andre Fedida and Wolin as "audit committee defendants."

[4] Plaintiff collectively defines the Officer Defendants, the Audit Committees defendants and the remainder of the directors as "Individual Defendants."

the accounting impact."

With regard to the other Individual Defendants, plaintiff alleges that they "breached their fiduciary duty . . . by knowingly approving the phony sale and the false financial statements". (Compl. ¶¶ 55, 34 and 35). Other than Daniel Glassman, the plaintiff does not provide any specific facts which support that the board of directors either knew of the Deconamine sale or that they were aware that the financial statements issued for the third quarter of 2004 included revenues from the Deconamine sale.

IV.

Based on these allegations, and the legal backdrop as set forth above, the court must determine whether plaintiff is excused from making a demand upon the Board of Directors of Bradley due to futility. (Compl. ¶52). For purposes of making this determination, the parties agree that futility is determined on the day the law suit is commenced (Compl. ¶52a). *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992). Hence, a pre-suit demand is ordinarily served upon the Board of Directors as it is constituted at that time. At the commencement of suit, there were nine directors, the seven directors who were on the Board at the time of the Deconamine sale, plus William J. Murphy and Leonard S. Jacob.

Plaintiff contends that the directors would not vigorously prosecute this action for four reasons. First, "Daniel Glassman and Audit Committee Defendants Andre Fedida, Kriegsman and Wolin will be held liable for breaching their fiduciary duties." (Compl. ¶52a). Second, Iris Glassman "is incapable of disinterestedly . . . considering a demand" due to familial relationships. (Compl. ¶52b). Third, Michael Fedida can not be disinterested because he is brother of Andre Fedida who is an audit committee member (Compl. ¶52c). And finally, "the misconduct . . . was not . . .

the result of a good faith exercise of business judgment (Compl. ¶ 52d).  Each of these reasons is considered below.

With regard to Daniel Glassman, the Amended Complaint sets forth with particularity that there is reasonable doubt as to whether he is disinterested. Daniel Glassman, CEO and Bradley Glassman, Senior Vice President of Marketing, entered a "modified" sales agreement of Deconamine in the amount of $1 million which sale revenue should not have been realized in the third quarter of 2004. More particularly, the Deconamine sales agreement allowed a customer to return the product and a receive a credit against future purchases of other products up and until February 1, 2005. Since the object of this suit directly attacks this conduct, it is fair to conclude that Daniel Glassman is not disinterested. In addition, entering the Deconamine contract was not a valid exercise of Daniel Glassman's business judgment. As a result, there is reasonable doubt with regard to his disinterest. Similarly, Iris Glassman, director, who is the spouse of Daniel and mother of Bradley, is not disinterested due to the close familial ties. *See Haseotes v. Bentas*, 2002 Del. Ch. LEXIS 106, *12 (2002); *Mizel v. Connelly*, 1999 Del. Ch. LEXIS 157 *014 (Del. Ch. 1999).

The next issue is whether there is reasonable doubt as to the disinterest of the three audit committee members because there is a substantial likelihood of personal liability if the suit were pursued by the corporation. The Third Circuit recently addressed the standard conduct which must be found in order to determine whether there is reasonable doubt as to the disinterest of the directors due to a substantial likelihood of personal liability. *Kanter v. Barella*, 489 F. 3d 170, 181 (3d Cir. 2007). In *Kanter*, the Court held that for a plaintiff to succeed on the substantial likelihood of personal liability test, he must show that "the Board recklessly ignored" facts which "establish that the Board acted egregiously or in bad faith." *Id.* at 181. In this case, there is evidence of a material

8

weakness regarding "documentation as to the effectiveness of our information technology internal controls over financial reporting." (Compl. at ¶47). Such internal controls are arguably the responsibility of the audit committee to oversee (Compl. ¶21); but other than that, the plaintiff does not alleged any other facts concerning the audit committee members. There are no facts in the Amended Complaint which remotely suggest reckless conduct sufficient to establish bad faith or egregious conduct. *Id.* at 181. *Aronson v. Lewis*, 473 A. 2d 805, 815 (Del. 1984). The Amended Complaint does not aver the directors received some personal benefit from the transaction or other incentive beyond that of other stockholders. *Rales v. Blasband*, 634 A. 2d 927, 936 (Del. 1993). More particularly, there is no allegation that audit committee directors received an extra bonus, stock options, or otherwise profited from the deconamine transaction. *See generally In Re Merck*, 2006 U.S. Dist. Lexis 27861 * 36, *rev'd on other grounds* 493 F.3d 393 (3d Cir. 2007). *In Re Prudential Derivative Litigation*, 282 N.J. Super. 256, 274 (1995). Plaintiff generally alleges that the audit committee members failed to implement adequate internal controls; however, there are no facts which show that they knew of the weakness prior to Grant Thornton's finding in April, 2005. Moreover, there is no allegation of "long standing business and/or philanthropic relationship" which would inhibit them from acting, nor any "relationships which were bias producing." See *Merck*, 2006 U.S. Dist. Lexis 27861 *56; *Beam v. Stewart,* 845 A.2d 1040 (Del. 2004). In fact, upon learning of the SEC inquiry, the audit committee retained separate counsel (Compl. ¶37), and the Board "cooperated" with SEC staff during the investigation (Compl. ¶37). The press releases enumerated in the Amended Complaint show that the directors, and the audit committee, in particular, kept investors apprised of the situation including the negative impact of the SEC investigation on certain loan agreements. (Compl. ¶41). Such actions and disclosures "appear to be precisely the types of

9

transactions an independent board exercising valid business judgment should take when made aware of a serious problem." *Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir.2007). In sum, the plaintiff has not overcome the presumption of disinterest with regard to the audit committee members.

With regard to three of the remaining directors (Daniel, Murphy, and Jacobs) the above reasons similarly apply, except the Amended Complaint has even fewer facts to support plaintiff's contention that there is reasonable doubt of their disinterest. The disinterest of the remaining director, Michael Fedida, is contested on the grounds that he is the brother of Andre Fedida (an audit committee member); hence, there is a bias producing familial relationship similar to that of Iris Glassman. Having found that plaintiff has not met its burden of proof with regard to the audit committee members including Andre Fedida, the argument with regard to Michael is speculative.

Lastly, plaintiff contends this is a sufficient basis for permitting this claim to go forward because Judge Hochberg allowed a securities fraud law suit emanating out of the same transaction to proceed. *See In Re Bradley Pharmaceuticals*, United States District Court, District of New Jersey, Civil Action No. 05-1219. The Court disagrees. In the securities fraud action, Daniel Glassman, Bradley Glassman and Brent Lenczycki were the individual defendants sued as opposed to the entire Board of Directors as is the case here. In short, the legal issues and the defendants are fundamentally different in the two cases.

The presumption of disinterest has not been overcome with regard to seven of the nine directors; accordingly, the plaintiff having failed to make a pre-suit demand upon the Board to prosecute this claim, the Complaint is dismissed.

Finally, plaintiff in a footnote requests another opportunity to amend his complaint.[5] (Pl. Br. P. 18 n. 6). Plaintiff failed to identify any additional facts which would support his position. Moreover, during oral argument plaintiff conceded that he did not, despite having the legal right to do so, review the internal documents of corporation. See N.J.S.A. 14A:5-28(4)[6] Generally, "common stockholder has the right of inspection of the books and records of a corporation to determine whether there has been proper management of the business . . .") *Kanter v. Barella*, 388 F.Supp.2d 474, 480 (D.N.J. 2005) aff'd 489 F. 3d 170, 181 (3d Cir. 2007). Having failed to make such inquiry and having failed to set forth any additional facts which would be germane to the issues, the plaintiff's request for leave to amend is denied. The Complaint is dismissed.

_____
PETER G. SHERIDAN, U.S.D.J.

December 6, 2007

---

[5] The plaintiff does not adhere to the Rule with regard to motions for leave to amend a complaint. F.R.C.P. 15 and L. Civ. R. 7.1(e).

[6] The statute states in part: Nothing herein contained shall impair the power of any court, upon proof by a shareholder of proper purpose, irrespective of the period of time during which the shareholder shall have been a shareholder of record, and irrespective of the number of shares held by him, to compel the production for examination by such shareholder of the books and records of account, minutes, and record of shareholders of a corporation.